UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MOHAMMAD SABOOR YAQUBI,

Petitioner,

v.

JULIO HERNANDEZ, *et al.*,

Respondents.

CASE NO. 2:26-cv-01227-GJL

ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS

Petitioner Mohammad Saboor Yaqubi ("Petitioner") is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. 1. On April 10, 2026, Petitioner, through counsel, filed a Petition for writ of habeas corpus under 28 U.S.C. § 2241, seeking release from custody.[1] Dkt. 1. The Petition has been fully briefed. Dkts. 1, 7, 10.

Having considered the parties' submissions, the balance of the record, and the governing law, the Court **DENIES** the Petition.

//

---

[1] The parties have consented to proceed in this matter before a United States Magistrate Judge. *See* Dkt. 5.

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS - 1

## I.    BACKGROUND

Petitioner, a citizen and national of Afghanistan, entered the United States without inspection or parole on or about September 30, 2024. Dkt. 9 ¶ 4; *see also* Dkt. 1 ¶ 21. On September 30, 2024, the Department of Homeland Security ("DHS") charged Petitioner as inadmissible under Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(7)(A)(i)(I), and issued him a Notice and Order of Expedited Removal. Dkt. 9 ¶ 4. U.S. Border Patrol officials transferred Petitioner to ICE custody that day. *Id*.

On October 11, 2024, Petitioner raised a fear of removal to Afghanistan and was subsequently referred to United States Citizenship and Immigration Services ("USCIS") for a credible fear interview. Dkt. 9 ¶ 5. On November 1, 2024, USCIS found Petitioner had a credible fear of return to Afghanistan. *Id*. ¶ 6. On that same day, the Office of Enforcement and Removal Operations ("ERO") released Petitioner from custody under humanitarian parole, INA § 212(d)(5), 8 U.S.C. § 1182(d)(5), and enrolled him in the Alternatives to Detention ("ATD") program. *Id*. ¶ 7; Dkt. 8-4, Ex. D.

As part of his parole, Petitioner was granted temporary authorization to remain in the United States for a period of one year from the date of his notice of parole, but parole "automatically terminated . . . at the end of the one-year period" unless extended by ICE "at its discretion." Dkt. 9 ¶ 7; Dkt. 8-4, Ex. D. Also on November 1, 2024, USCIS issued Petitioner a Notice to Appear ("NTA") at immigration court on March 28, 2028, charging him as inadmissible under both 8 U.S.C. §§ 1182(a)(7)(A)(i)(I), and (a)(6)(A)(i). Dkt. 9 ¶ 6; *see also* Dkt. 1 ¶ 22.

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS - 2

As part of the ATD, Petitioner was subsequently issued a GPS ankle monitor on July 28, 2025. Dkt. 9 ¶ 9. At the time, Petitioner was informed that his parole could be revoked if he failed to stay within determined GPS coordinates. *Id*.

On May 1, 2025, Petitioner filed Form I-589, Application for Asylum and for Withholding of Removal ("Form I-589") with the immigration court. Dkt. 9 ¶ 8. On November 1, 2025, Petitioner's parole expired, thereby reverting him back to the status he had at the time of his September 2024 arrival, an "applicant for admission." *See* Dkt. 8-4, Ex. D.

On December 24, 2025, Petitioner was traveling in a friend's vehicle in northern Washington, where Canadian officials stopped them near the Pacific Highway Port of Entry in Blaine, Washington. Dkt. 1 ¶ 24; Dkt. 9 ¶ 10. Canadian officials then returned Petitioner to the United States pursuant to the Safe Third Country Agreement ("STCA").[2] Dkt. 9 ¶ 10.

Upon Petitioner's return to the United States, U.S. Border Patrol officials referred him to ERO for further processing. Dkt. 9 ¶ 10. ERO issued a warrant for Petitioner's arrest on December 24, 2025, charging him with violations of his ATD by leaving the GPS zone, and transferred him to NWIPC, where he remains detained. *Id*. ¶ 11. On December 25, 2025, ERO terminated Petitioner's ATD. *Id*. ¶ 12.

---

[2] The parties maintain separate accounts of Petitioner's encounter with Canadian officials on December 24, 2025. For his part, Petitioner states he traveled to Blaine that day in a friend's vehicle, when the driver made a wrong turn and accidentally approached the Canadian port of entry. Dkt. 1 ¶ 24. Petitioner states he was immediately re-detained by DHS, "presumably based on the allegation in his I-213 that he violated his ATD requirements when he "departed GPS zone." *Id*. Also, in his Traverse, Petitioner attaches a Declaration of Canadian resident Nasrudin Gulabzada, who asserts he was planning to meet Petitioner near the U.S.-Canada border that day for a "personal visit," and that Petitioner's "arrival at the border and subsequent detention appeared to be accidental and not the result of any deliberate wrongdoing." Dkt. 10-1, Ex. E. For Respondents' part, in support of their Response to the Petition, they filed a Declaration of Joseph Carnevale, a deportation officer, who asserts that Petitioner in fact made a claim for asylum in Canada, but Canadian officials denied him entry and, thus, he was returned to the United States via the STCA at that point. Dkt. 9 ¶ 10. Respondents have not provided documentation in support of their assertion that Petitioner applied for and was denied asylum.

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS - 3

On January 14, 2026, Petitioner, represented by counsel, appeared for a bond hearing at the Tacoma Immigration Court. *Id*. ¶ 13. Tacoma immigration judge ("IJ") Tammi Fitting denied Petitioner's request for bond, finding that she lacked jurisdiction and, in the alternative, finding Petitioner to be a flight risk. *Id*.; Dkt. 8-7, Ex. G.

On February 19, 2026, Petitioner appeared for a hearing on the merits of his applications for relief from removal. Dkt. 9 ¶ 14; Dkt. 8-8, Ex. H. Tacoma IJ Kenneth Sogabe denied Petitioner's application for asylum and ordered him removed to Afghanistan but granted Petitioner's application for withholding of removal under the Convention Against Torture ("CAT"). Dkt. 9 ¶ 14; Dkt. 8-8, Ex. H. Both parties reserved the right to appeal the IJ's decision, but neither filed an appeal by the March 23, 2026, deadline for doing so. Dkt. 9 ¶ 14; *see also* Dkt. 8-8 at 5, Ex. H. As such, Petitioner's removal order became final on April 23, 2026, or the date "[u]pon expiration of the time allotted for an appeal." 8 C.F.R. § 1241.1(c).

According to Respondents, on March 25, 2026, ERO began efforts to secure a travel document for Petitioner's removal to a third country by requesting Petitioner's assistance in identifying potential third countries for his removal. Dkt. 9 ¶ 15. That day, ERO served Petitioner with Form I-229(a), Warning for Failure to Depart and an Instruction Sheet Regarding Requirement to Assist in Removal. *Id*. Petitioner refused to sign either document or assist in the identification of a third country for his removal. *Id*. ERO met with Petitioner on two further occasions, but Petitioner continued to refuse to assist in the identification of a third country for his removal. *Id*. ¶¶ 16–17.

Finally, Respondents declare that ERO intends to continue pursuing third country removal and will work with the consulate of the country that accepts Petitioner to obtain a proper travel document. Dkt. 9 ¶¶ 20. Upon identifying a third country for Petitioner's removal, ERO

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS - 4

will notify Petitioner of the anticipated third country and will provide him with a meaningful opportunity to raise a fear-based claim to whatever third country is designated for removal. *Id*.

Petitioner filed the instant habeas Petition on April 10, 2026. Dkt. 1. Petitioner claims his detention is unlawful because Respondents did not provide notice or a hearing "where ICE was required to justify the basis for re-detention or explain why [Petitioner] is a flight risk or danger to the community." Dkt. 1 ¶ 4. Petitioner requests his release and an injunction preventing Respondents from re-detaining him absent written notice and a hearing where Respondents must prove by clear and convincing evidence that he is a flight risk or danger to the community and that no other alternatives to detention would mitigate those risks. *Id*. at 11–12. Respondents filed a Response on April 27, 2026, arguing that Petitioner is subject to mandatory detention under Section 235(b)(2) of the INA, 8 U.S.C. § 1225(b)(2). Dkt. 7. Petitioner replied on May 4, 2026. Dkt. 10.

## II.    LEGAL STANDARD

Federal courts have authority to grant writs of habeas corpus to individuals in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). To obtain such relief, habeas petitioners have the burden of demonstrating there is no lawful basis for their detention by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

//

//

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS - 5

## III.    DISCUSSION

Before Petitioner's detention on December 24, 2025, Petitioner was living in the community pursuant to a discretionary grant of parole set forth in 8 U.S.C. § 1182(d)(5). Dkt. 9 ¶ 7. However, Petitioner's parole was terminated automatically on November 1, 2025, and thus, at the time of his arrest, his status reverted back to that of an "applicant for admission." 8 C.F.R. § 212.5(e)(1)(i). Petitioner argues that his detention "without written notice and a hearing before a neutral decisionmaker to determine whether re-detention is warranted based on danger or flight risk" is a violation of the Fifth Amendment's Due Process Clause. Dkt. 1 ¶ 40. Respondents counter that because he briefly left the United States and was apprehended upon his return, Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(b)(2)(A). Dkt. 7 at 8–9.

In their Response, Respondents urge the Court to follow this Court's decision in *Mohan v. Noem, et al.*, No. 2:26-cv-0534-TMC, 2026 WL 764176 (W.D. Wash. Mar. 18, 2026). Similar to this case, the petitioner in *Mohan*, an individual who had previously been released from ICE detention on bond, was near the Peace Arch Park in Blaine, Washington, when he mistakenly crossed the border into Canada. *See id.*, 2026 WL 764176, at *1. When Canada refused him entry, he was inspected at the U.S. port of entry and found subject to mandatory detention based on new grounds of inadmissibility. *Id*. The Court found the petitioner was properly held under § 1225(b)(2)(A) because he was detained at a port of entry while attempting to re-enter the United States, i.e. "seeking admission" to the United States, "even if his brief foray into Canada was unfortunate and accidental." *Id.*, 2026 WL 764176, at *3.

As with the petitioner in *Mohan*, although Petitioner has lived in the United States since September 2024, he is "seeking admission" to the country "as of [his] most recent apprehension [ ] by immigration officers." *Del Valle Castillo v. Wamsley*, No. 2:25-cv-02054-TMC, 2025 WL

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS - 6

3524932, at *4 (W.D. Wash. Nov. 26, 2025). After being denied admission on the Canadian side of the border at the Peace Arch port of entry, either because he crossed the border accidentally or Canada denied his entry (*see supra* note 2, at 3), Petitioner was returned to the U.S. pursuant to the STCA. Dkt. 9 ¶ 10. Like all others crossing the border that day, Petitioner was subject to inspection by U.S. border authorities. Dkt. 7 at 10–11; *see also* 8 U.S.C. § 1225(a)(3) ("All [noncitizens] . . . who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States shall be inspected by immigration officers."); *Mohan*, 2026 WL 764176, at *3. The record shows that at the time he was returned to the U.S. after crossing the Canadian border on December 24, 2025, U.S. Border Patrol officials determined Petitioner did not have valid travel documents and "due to his ATD violation [by departing the GPS zone] [Petitioner] is being forwarded to ERO for custody." Dkt. 9 ¶¶ 10–11; Dkt. 1-2 at 7, Ex. B. Respondents have treated Petitioner as subject to mandatory detention and have not released him since he was detained on December 24, 2025.

Petitioner refers to several cases applying *Mathews v. Eldridge*, 424 U.S. 319 (1976) and addressing whether re-detention of a noncitizen comports with due process. Dkt. 1 ¶ 5 (citing *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316 (W.D. Wash. 2025); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1134 (W.D. Wash. 2025); *Ledesma Gonzalez v. Bostock*, 808 F. Supp. 3d 1189 (W.D. Wash. 2025); *Kumar v. Wamsley*, No. 2:25-cv-1772-JHC-BAT, 2025 WL 2677089, at *2 (W.D. Wash. Sept. 17, 2025). But unlike those cases, Petitioner was *not* re-detained while residing in the United States. Rather, he was inspected at a port of entry and found subject to detention based on a finding of inadmissibility, namely that he violated his ATD by departing the GPS zone and no longer had documents authorizing his admission or continued parole into the United States. Dkt. 1-2, Ex. B; Dkt. 7 at 13–14. It follows that Petitioner's detention at the border

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS - 7

in December 2025 does not implicate the liberty interest he obtained when he was paroled into the United States in 2024 and granted temporary authorization to remain only until November 1, 2025. *See Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018) (the immigration decision process "generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible.").[3]

Because Petitioner was inspected and detained at a port of entry while "seeking admission" to the United States, his mandatory detention pursuant to 8 U.S.C. § 1225(b)(2)(A) does not violate the INA or his due process rights, and Respondents were not required to provide him with a pre-deprivation or bond hearing. *See Rosario Cantillo v. Warden, Northwest Detention Center*, No. 2:26-cv-0575-DGE, 2026 WL 886553, at *3–4 (W.D. Wash. Apr. 1, 2026) (holding in part that petitioner was properly detained under § 1225(b) following the automatic termination of his parole pursuant to 8 U.S.C. § 1182(d)(5)(A)).

### IV.   CONCLUSION

For the foregoing reasons, the Petition (Dkt. 1) is **DENIED**.

Dated this 14th day of May, 2026.

Grady J. Leupold
United States Magistrate Judge

---

[3] Mandatory detention under § 1225(b) without a bond hearing violates due process if it is "unreasonably prolonged." *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1117 (W.D. Wash. 2019). Petitioner, who has been detained for nearly five months, does not argue that his detention has become unreasonably prolonged under the six *Banda* factors.

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS - 8